**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: March 28 2011**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 10-30025 |
| | ) | |
| Gregory E. Miller and | ) | Chapter 7 |
| Suzanne M. Miller, | ) | |
| | ) | |
| Debtors. | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION REGARDING OBJECTION TO HOMESTEAD EXEMPTION

This case came before the court for hearing on the Chapter 7 Trustee's objection to Debtors' claim of a homestead exemption ("Objection") [Doc. # 18] and Debtors' response [Doc. # 20]. The court held a hearing on the Objection that Debtors, their counsel and the Chapter 7 Trustee ("Trustee") attended in person and at which the parties presented testimony and other evidence in support of their respective positions.

The district court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 84-1 of the United States District Court for the Northern District of Ohio. A proceeding regarding exemptions from property of the estate is a core proceeding that the court may hear and determine. 28 U.S.C. § 157(b)(1) and (b)(2)(B). For the reasons stated below, the court will overrule the Objection.

## FACTUAL BACKGROUND

On October 5, 1999, Debtors Gregory and Suzanne Miller purchased approximately 1.8 acres of real property located in Ottawa County, Ohio. Their house, garage and a horse barn are located on that property. On April 13, 2000, the Millers purchased from different sellers approximately 2.2 acres of real property located adjacent to and contiguous with the 1.8 acres purchased in October. The 2.2 acres is described as a pasture with no structures on the land. The 1.8-acre property and the 2.2-acre property are identified by separate legal descriptions and have been assigned separate permanent parcel numbers by the Ottawa County Auditor. Although the Millers purchased the 1.8 acres with the intent to also purchase the 2.2 acres, they waited until April 2000 when the sellers of the 2.2 acres returned from Florida in order to close on that property.

The Millers own three horses and board horses for others. Suzanne Miller also gives horse-riding lessons. In 2009, she reported income of $164 from the business of boarding horses and giving riding lessons. The Millers' two sons ride and show horses in competition. According to Suzanne Miller, the 2.2 acres is necessary not only to pasture the horses but also for her sons to practice for horse-riding/showing competition and for her to give riding lessons. In addition, the 2.2 acres is used by the family for bon fires and by her sons for paint ball tournaments.

After purchasing the property, the aeration septic system servicing the Millers' home failed. Due to a change in the law, the Millers were required by the health department to install a leaching septic system, consisting of a septic tank and eight 100-foot leaching trenches ("the leach field"). [*See* Debtors' Ex. 7]. Although the leach field is located on the 1.8-acre property, it drains into tiles located along the northern border of the adjacent 2.2-acre pasture, which, in turn, drain into a ditch located on the eastern border of the 2.2 acre pasture. As a result, an easement across the 2.2 acres was required for the septic system to be installed.[1] [*See* Debtors' Ex. 7]. Because the leach field is located on the 1.8-acre property, the horses owned and boarded by the Millers can no longer pasture on that property. They must pasture on the 2.2 acres, which the Millers have fenced in entirely.

The Millers filed their Chapter 7 bankruptcy petition on January 5, 2010. On bankruptcy Schedule A, they separately list the 1.8-acre and the 2.2-acre properties. [Debtors' Ex. 1, p. 10]. The Millers value

---

[1] The hearing testimony is not clear as to whether the tiles are located on the 2.2-acre property owned by the Millers or the property just north of the 2.2 acres that is owned by another individual. Also, the testimony is not clear as to whether an easement across the 2.2 acres was given by the Millers to the owner of the other property or was granted to themselves. In either case, the record shows that a 20-foot-wide easement across the 2.2 acres was required for the leaching septic system to be installed on the Millers' property. [*See* Debtors' Ex. 7].

the 1.8 acres at $145,000 and indicated that it is encumbered by a mortgage in the amount of $136,072. They value the 2.2 acres at $25,000 and indicate that it is unencumbered by any mortgage. [*Id.*] On Schedule C, the Millers claim an exemption under Ohio Revised Code § 2329.66(A)(1) in the amount of $9,000 in the 1.8-acre property and $25,000 in the 2.2-acre property. [*Id.,* p. 14, Schedule C].

## LAW AND ANALYSIS

As authorized by 11 U.S.C. § 522(b)(2), the Ohio legislature opted out of the federal exemptions provided in § 522(d). *See* Ohio Rev. Code § 2329.662. As a result, debtors for whom the applicable exemption law under § 522(b)(3)(A) is Ohio law must claim exemptions under the relevant Ohio statutes and under applicable non-bankruptcy federal law. There is no dispute that Debtors have been domiciled in Ohio for more than the 730 days preceding the date of the filing of their petition such that Ohio exemption law applies in this case. *See* 11 U.S.C. § 522(b)(3)(A).

Under Bankruptcy Rule 4003(c), the party objecting to the exemption, in this case the Trustee, has the burden of establishing that the debtor is not entitled to the claimed exemption. *In re Andrews*, 301 B.R. 211, 213 (Bankr. N.D. Ohio 2003). The standard of proof is by a preponderance of the evidence. *In re Roselle*, 274 B.R. 486, 490 n.4 (Bankr. S.D. Ohio 2002). In making this determination, and in order to further the fresh-start policy of the Bankruptcy Code, exemption statutes are generally to be liberally construed in a debtor's favor. *In re Andrews*, 301 B.R. at 213. The rule that exemption statutes are to be construed liberally in favor of the debtor is also followed by the courts of Ohio. *See, e.g., Daugherty v. Central Trust Co.*, 28 Ohio St.3d 441 (1986); *Dennis v. Smith*, 125 Ohio St. 120 (1932); *Sears v. Hanks*, 14 Ohio St.298, 301)(1863)("The [homestead] act should receive as liberal a construction as, can fairly be given to it."].

In this case, the Millers claim on their Schedule C a homestead exemption in both the 1.8-acre and 2.2-acre property under Ohio Revised Code § 2329.66(A)(1)(b). Under this statute, a person may exempt "[t]he person's interest, not to exceed twenty thousand two hundred dollars, in one parcel or item of real or personal property that the person or a dependent of the person uses as a residence." Ohio Rev. Code § 2329.66(A)(1)(b).

The Trustee objects to the Millers' claim of an exemption in the 2.2-acre pasture, characterizing that property as a vacant lot adjacent to the Millers' residence. According to the Trustee, the 2.2-acre pasture is not used as a residence and is a separate parcel from the 1.8-acre property. Pointing to language in the Ohio statute limiting the homestead exemption to just "one parcel" of real property that a person "uses as a residence," the Trustee argues that the Millers are entitled to claim an exemption only in the 1.8-acre

3

property where their house and barn are located. The Millers counter that the 2.2 acres is used for residential purposes and that the definition of "parcel," as contemplated under the Ohio exemption statute, is not limited to separate property identified by the county auditor with a permanent parcel number.

The parties' arguments require the court to construe the meaning and scope of the terms "parcel" and "uses as a residence," neither of which is defined in the Ohio exemption statute. In applying state statutory law, a federal court must give the state statute "the meaning and effect attributed to it by the highest court of the state, as if the state court's decision were literally incorporated into the enactment, whatever the federal tribunal's opinion as to the correctness of the state court's views." *Burns Mortgage Co. v. Fried*, 292 U.S. 487, 494 (1934). There is, however, no controlling Ohio Supreme Court authority that interprets the application of the terms "parcel" and "uses as a residence" in § 2329.66(A)(1)(b) under any theory presented in this case. In the absence of controlling state case law, the federal court's role is to "ascertain how [the Ohio Supreme Court] would rule if it were faced with the issue." *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999). The Ohio Supreme Court, in turn, directs that statutory interpretation requires a court to ascertain the legislative intent in enacting a statute. *Carnes v. Kemp*, 104 Ohio St. 3d 629 , 632 (Ohio 2004). "In order to determine that intent, a court must first look to the words of the statute itself," *id.,* and all statutes that relate to the same general subject matter must be read *in pari materia, id.* The Sixth Circuit directs that this court may use the decisional law of the state's lower courts and other federal courts construing state law to determine how the Ohio Supreme Court would rule on an issue of statutory interpretation. *Meridian Mut. Ins. Co.,* 197 F.3d at 1181.

**I.**     **Do the 1.8-Acre and 2.2-Acre Properties Constitute "One Parcel" of Real Property as Contemplated Under Ohio Revised Code § 2329.66(A)(1)(b)?**

While there appears to be no Ohio cases interpreting the term "one parcel" as used in § 2329.66(A)(1)(b), in support of their position that the 1.8-acre and 2.2-acre properties together constitute "one parcel" under that statute, the Millers cite *In re Gregory*, 229 B.R. 168 (Bankr. N.D. Ohio 1999), and *In re Williams*, 345 B.R. 853 (Bankr. N.D. Ohio 2006). In *In re Gregory*, the trustee objected to the debtors' claim of a homestead exemption in real property shown in the county auditor's records as containing 19.448 acres of land. The trustee argued that the term "one parcel" in the Ohio exemption statute should be defined to mean a "homestead" as is defined in Ohio Rev. Code § 323.151(A) for purposes of collecting property taxes to mean "so much of the land surrounding it, not exceeding one acre, as is reasonably necessary for the use of the dwelling or unit as a home." *In re Gregory*, 229 B.R. at 169. Finding that definition expressly limited to those sections of the Ohio Revised Code dealing with the homestead exemption for property tax

4

purposes, the bankruptcy court cited Black's Law Dictionary for the general definition of "parcel" as "a contiguous quantity of land in possession of, owned by, or recorded as property of the same person." *Id.* The court went on to overrule the trustee's objection, explaining that while an earlier version of the Ohio exemption statute provided for carving out a one-acre exempt area, the Ohio legislature repealed that division of property scheme in 1979 and passed the current form of exemption laws found in § 2329.66. The court found that "Ohio law no longer provides for a restriction of the homestead exemption to a one acre parcel to be divided out of the Debtors' total residential real property" and held that the dollar amount of the exemption set forth in §2329.66 "is applicable to the entire homestead interest." *Id.* at 170.

In *In re Williams*, the debtors claimed an exemption in two properties, land on which their home was located and a non-contiguous thirty-acre parcel of land. *In re Williams*, 345 B.R. at 855. The trustee objected to the exemption in the thirty acres since the land was "not adjacent to the homestead." *Id.* at 856. Citing *In re Gregory*, and applying the definition of "parcel" set forth in that case, the court held that "only the debtors' residence, not their 30-acre noncontiguous parcel of land, can be claimed as exempt under § 2329.66(A)(1)(b)." *Id.*

Nevertheless, notwithstanding the definition in *In re Gregory* and *In re Williams*, it is the Trustee's position that, "parcel" must be further defined by the legal description of real property and the permanent parcel number assigned to that property by the county auditor. While it is true that neither case cited by the Millers involves two contiguous properties with separate legal descriptions and separate permanent parcel numbers as is the case here, the court is not convinced that the Ohio Supreme Court would embrace the definition of parcel advanced by the Trustee.

In *Park Ridge Company v. Franklin County Board of Revision*, 29 Ohio St. 3d 12 (1987), the Ohio Supreme Court considered the meaning of the term "lot or parcel of real estate" as used in Ohio Revised Code § 5713.01, which requires the county auditor to determine the true value in money of "each lot or parcel of real estate. . . ." The auditor argued that the terms refer to permanent parcels defined on the auditor's records with separate parcel numbers, thus requiring the auditor to value each numbered parcel separately. *Id.* at 15. Rejecting that argument, the Court noted that Ohio's real property tax law uses the terms "tract," "lot," and "parcel" interchangeably and explained:

> Numbered permanent parcels facilitate conveyancing and may serve other valuable purposes. However, there is no valid reason why their relatively arbitrary boundaries must always limit valuation practices for real property taxes. The true value for real property may well depend on its potential use as an economic unit. That unit may include multiple parcels, or it may be part of a larger parcel, on the auditor's records. The boundaries of that unit may change with time and circumstances. Thus, a separate tract for valuation purposes need not

5

correspond with a numbered parcel.

*Id.* The Court, therefore, held that "[f]or tax valuation purposes, property with a single owner, for which the highest and best use is a single unit, constitutes a tract, lot, or parcel." *Id.* at 16.

Although the Ohio Supreme Court's interpretation of "parcel" in *Park Ridge Company* was not in the context of the Ohio exemption statute, this court nevertheless finds it instructive as to how it would rule if presented with the issue of determining the meaning of parcel in § 2329.66(A)(1)(b). Even under real property tax law, the term "parcel" is not a term of art, and the county auditor's designation of parcel numbers does not necessarily define "parcel" for all purposes relating thereto.

Giving the Ohio homestead exemption provision a liberal construction as is required by other Ohio Supreme Court precedent, the court believes that the Ohio Supreme Court would define "parcel," as used in § 2329.66(A)(1)(b), more broadly than the permanent parcel defined in the auditor's records with a separate parcel number. As the Court similarly concluded in *Park Ridge Company*, there is no valid reason why the numbered permanent parcels must always limit the determination of a parcel of real property used as a person's residence. Real property used as a residence may well include more than one numbered parcel in the auditor's record. An obvious example would be a situation where a person purchases two vacant lots and builds a home situated in part on both lots.

Based on the analogous reasoning in *Park Ridge Company* and the general definition of parcel as set forth in *In re Gregory* and *In re Williams*, the court concludes that the Ohio Supreme Court would hold that a contiguous quantity of land in possession of, owned by, or recorded as property of the same person may constitute a "parcel" for purposes of the homestead exemption, irrespective of whether that quantity of land includes more than one numbered parcel in the county auditor's record, to the extent that the land is a single unit in its use by the person or a dependent of the person as a residence. *Cf. In re Ford*, 415 B.R. 51, 58 (Bankr. N.D.N.Y. 2009) (finding that two parcels qualified as "one lot of land" under the New York homestead exemption provision where both parcels were used for residential purposes). Where property is used as a residence, the purpose of the statutory limitation to one parcel is more likely intended to prevent debtors from claiming an exemption in two separate residences, such as a home in Ohio that is used as a residence for part of the year and a home on Catawba Island used as a residence for part of the year. For the reasons discussed below, the court finds that the 1.8-acre and 2.2-acre properties at issue in this case are a single unit in their use by the Millers as a residence.

**II.     Does the Millers' Use of the 2.2-Acre Property Constitute Use as a Residence?**

There being no dispute that the 1.8-acre property on which their home is located is used as the

Millers' residence, the court must determine whether the Millers' use of the 2.2-acre pasture constitutes use as a residence. As stated earlier, there is no statutory definition of "uses as a residence." The general definition of "residence" is a "place where one actually lives" or a "house or other fixed abode; a dwelling." Black's Law Dictionary (9th ed. 2009). The parties cite, and the court has found, no Ohio case law to assist the court in determining what constitutes using property as a residence. Therefore, in addition to the general definition of "residence," the court has also examined cases from other jurisdictions with homestead exemption laws requiring that the property claimed as exempt be used as a residence. *See In re C.S.*, 115 Ohio St. 3d 267, 281-82 (2007) (finding persuasive the reasoning of Connecticut court in interpreting statute); *State v. Tuomala*, 104 Ohio St. 3d 93, 97-98 (2004) (looking to cases in other jurisdictions in interpreting criminal statute); *State v. Murphy*, 49 Ohio St. 3d 206, 209 (1990) (same).

In *In re Lanier*, 394 B.R. 382 (E.D.N.C. 2008), the court affirmed the bankruptcy court's decision allowing the Chapter 7 trustee's objection to the debtors' claim of a homestead exemption in a nine-acre lot adjacent to the twelve-acre lot on which their home was located. The debtors used the nine-acre lot to raise rescued horses used to minister to people in their church and community. *In re Lanier*, 2008 WL 1806117, *1 (Bankr. E.D.N.C. April 18, 2008). The bankruptcy court noted that there was "no structure, storage shed, well, driveway, parking area, playground, septic system, or easement" on the nine-acre lot and that the children that visited the horses were not dependents of the debtors. *Id.* at *2. It, therefore, concluded that the use to which the debtors put the property "[was] not linked to the support, existence, or enhancement of the structure in which the debtors live." *Id.*

In *In re Hughes*, 306 B.R. 683 (Bankr. M.D. Ala. 2004), applying Alabama's homestead exemption, which is "extended to property devoted to 'use and occupancy as a home, a dwelling place,'" the court allowed an exemption in property adjacent to leased property on which debtors' home was located. *Id.* at 686. The court stated that "the Alabama exemption, protecting the interest of a person in his residence, applies because of the use to which the land is put, not because of the fixtures on it or the quality of the debtor's interest." The court found that debtors' use of the property for parking their vehicles and as a playground for their children "was consistent with homestead purposes." *Id.*

In determining for purposes of the state's homestead exemption whether a debtor uses property as a residence, other courts similarly do not restrict their inquiry to simply the location of the structure in which the debtor lives. *See In re MacLeod*, 295 B.R. 1, 6 (Bankr. D. Me. 2003) (explaining that "[r]esidential use may extend also to contiguous property which is used for a complimentary [*sic*] activity, like family recreation"); *In re Jones*, 397 B.R. 765, 770-71 (Bankr. D.S.C. 2008) (applying the South Carolina

7

homestead exemption, which is proper only in real property that the debtor uses as a residence, and allowing the debtors to include in their exemption an adjacent lot that they used for access to their house); *In re Edwards*, 281 B.R. 439, 450 (Bankr. D. Mass. 2002) (finding that debtor satisfied the Massachusetts homestead requirement that he "occupy the property in question as his principal residence" with respect to a parcel adjacent to the parcel on which his home was located where the debtor had landscaped a portion of the adjacent parcel, built a garden shed and dog run on it and his children used the adjacent parcel as a play area); *In re Mohammed*, 376 B.R. 38, 42 (Bankr. S.D. Fla. 2007) (rejecting trustee's argument that adjacent lot was not part of the debtors' residence where debtors planted fruit trees on the lot and used the lot for the family's recreational activities and for their dogs); *In re Ford*, 415 B.R. at 58 (applying New York law and finding that debtor's use of a parcel of land was for residential purposes as it was the location of the well and septic system that supported the adjacent residential property).

  Notwithstanding the lack of Ohio case law addressing the issue, based on the foregoing authorities, and construing the Ohio homestead exemption provision liberally in favor of debtors, the court concludes that the Ohio Supreme Court would hold that a debtor uses property as a residence if the use is linked to the support, existence, or enhancement of the structure or for activities normally associated with a residence, such as family recreation. In this case, the 2.2-acre property is used for such purposes. The property is used to maintain the septic system that supports the Millers' home. The fact that they could retain an easement across the property if the property is sold, as argued by the Trustee, does not negate the fact that the property is presently used for such purposes. The property is also necessary to pasture the horses owned by the Millers and is used by their family for bonfires and by their sons to practice for their horse-riding/showing competition and for paint ball tournaments. Although Suzanne Miller also uses the property for the business purposes of horse-riding lessons and pasturing several horses that she boards for others, her income from such activities is minimal and such use is not inconsistent with Debtors' use for residential purposes. *See In re Allman*, 286 B.R. 402, 407 (Bankr. D. Ariz. 2002) (finding that "use that is not inconsistent with residential use will not, of itself, compel denial of the homestead [exemption]"); *In re Ford*, 415 B.R. at 59-61 (agreeing that if property is used as a principal residence, "the court should not further scrutinize the varied uses to which the residential property may be subject"). While use of property for business purposes may render the property ineligible for the homestead exemption where such use is the primary use of the property, *see In re Holt*, 357 B.R. 917, 923-24 (Bankr. M.D. Ga. 2006) (finding that debtors were not entitled to a homestead exemption in rental property that was contiguous with their residences); *In re Radtke*, 344 B.R. 690, 693 (Bankr. S.D. Fla. 2006) (same), that is not the situation in this case. Suzanne

8

Miller's use of the property for business purposes is incidental to the family's use for residential purposes.

In light of the foregoing, the court finds that the Millers are entitled to a homestead exemption in one parcel of real property used as a residence that consists of the 1.8-acre and contiguous 2.2-acre properties. As the exemption provided in § 2329.66(A)(1)(b) "is applicable to the entire homestead interest," *In re Gregory*, 229 B.R. at 170, it is applicable to the entire parcel as a single unit.

### III. The Trustee Does Not Have A Right To Direct The Applicability Of The Homestead Exemptions

The Trustee cites *In re Williams* in support of an alternative argument that the homestead exemption should not apply to the 2.2-acre pasture. In *In re Williams,* in addition to the issue of whether debtors had exemption rights in a thirty-acre parcel that was not contiguous with their residence, the court was presented with a second issue. Both the residential property and the thirty-acre parcel were encumbered by a single mortgage. *In re Williams*, 345 B.R. at 857. Although the residential property was worth less than the mortgage, the combined value of the properties exceeded the value of the mortgage. If upon sale of the property, the mortgage was first allocated as an encumbrance against the debtors' residence, with the deficiency then set against the thirty-acre parcel, $17,000 in equity would exist in the thirty-acre parcel. However, if the allocation was made in the reverse order, the $17,000 in equity would exist in the residential property. *Id.* Under the first scenario, the debtors would have no equity against which to claim a homestead exemption and $17,000 would be left to administer for the benefit of unsecured creditors. *Id.* Under the second scenario, the $17,000 in equity would exist in the residential property, thus allowing the debtors to claim the homestead exemption. *Id.*

The court found that although debtors have the right to control the order of sale of properties before they file a bankruptcy petition when doing so would protect their exemption interest, that right passes to the trustee as estate property when debtors file for bankruptcy relief. *Id.* at 858. The court explained that "[t]he doctrine of marshaling of assets is invoked when needed to achieve an equitable distribution of property which aligns itself with the trustee's duties to equitably distribute a debtor's assets in accordance with the Bankruptcy Code's priority scheme." *Id.* Thus, the court concluded that it is for the trustee, not the debtor, to decide how and if the doctrine of marshaling of assets should be applied. *Id.*

To the extent the Trustee's argument is that he has the right to determine whether the Millers' homestead exemption can be applied to the 2.2-acre pasture, the holding in *In re Williams* is inapposite. While the court held that the right to marshal assets is a right that passes to a bankruptcy trustee even where the exercise of that right may defeat a debtor's ability to claim property as exempt, the mortgage on the Millers' property encumbers only the 1.8-acre property. Marshaling of assets, an equitable doctrine giving

9

a debtor the right to control the order of sale of two properties that secure a single mortgage, is therefore inapplicable. The fact that the 1.8-acre and 2.2-acre properties are used as a single unit for residential purposes and thus, are one parcel for purposes of the Ohio homestead exemption, does not enlarge the collateral securing the debt owed to the Millers' secured creditor.

## **CONCLUSION**

For the foregoing reasons, the court concludes that the 1.8-acre and 2.2-acre properties owned by the Millers constitute "one parcel" of real property for purposes of the Ohio homestead exemption as they are not only a contiguous quantity of land owned by the same persons but are also used as one unit by the Millers and their sons as a residence. The Trustee's Objection will, therefore, be overruled.

The court will enter a separate order in accordance with this Memorandum of Decision.